**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| SAMUEL ANTHONY LONGORIA, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. __5:25-cv-00032__ |
| | § | |
| ALAMO COLLEGES DISTRICT, | § | |
| | § | |
| *Defendant.* | § | |

---

### PLAINTIFF'S ORIGINAL COMPLAINT

---

NOW COMES Samuel Anthony "Tony" Longoria, Plaintiff in the above-styled and numbered cause, and files his Original Complaint against Defendant Alamo Colleges District. Plaintiff would respectfully show the Court the following:

### I. THE PARTIES

1.1    Plaintiff Samuel "Tony" Longoria ("Plaintiff" or "Longoria") is an individual residing in Bexar County, Texas.

1.2    Defendant Alamo Colleges District ("Defendant" or "Alamo Colleges" or "College District") is a college or college district organized under the laws of the State of Texas for the purpose of operating a community college at several campuses in and around San Antonio, Texas. Defendant may be served with process by serving its Chancellor, Dr. Mike Flores, at 2222 N. Alamo Street, Room 304, San Antonio, Texas 78215. Plaintiff also intends to request a waiver of service of summons from Defendant's General Counsel, Dr. Ross Laughead and Roxella Cavazos, at the foregoing address.

## II.  JURISDICTION AND VENUE

2.1    This Court has jurisdiction over this action under 28 U.S.C. § 1331 because one or more of Plaintiff's causes of action is created by federal law, specifically Title VII of the Civil Rights Act of 1964 § 2000e *et seq*., and 42 U.S.C. §§ 1983 and 1988. This Court has supplemental jurisdiction over Plaintiff's state law claim under 28 U.S.C. § 1367.

2.2    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), as all or part of Plaintiff's claims accrued in Bexar County, Texas, which is within this district and division.

## III.  FACTUAL BACKGROUND

### A.  OVERVIEW

3.1    Plaintiff Tony Longoria, as a Lead Faculty and full-time professor in the Speech unit at Palo Alto College (a component community college of Defendant Alamo Colleges District), had always gotten along with both his faculty colleagues and his administrative supervisors. Under Professor Longoria's leadership, both the Speech unit and the Performing and Communication Arts Department it resided under functioned well, and Plaintiff was generally satisfied in life, both professionally and at home. As Lead Faculty, Longoria's role required him to work and communicate regularly and one-on-one with his department Chair, serving as the liaison between the Chair and the Speech unit faculty. He took that role seriously, and had always successfully executed his liaison duties with the past Chairs.

3.2    Beginning in May 2023, Plaintiff's comfortable life came to an abrupt halt, with the hiring of a new departmental Chair, Dr. Rosalinda Ortiz. Chair Ortiz began her job at Alamo Colleges District with "guns blazing," immediately attempting to command and control the department and its faculty with her aggressive "administrative management" leadership style, as opposed to taking the collaborative, shared governance approach the department's faculty,

including Lead Faculty, like Plaintiff Longoria, had always been accustomed to. From the outset, Ortiz would regularly "bark" orders at the faculty, constantly reminding them that she was the boss and therefore could do whatever she wanted, and would intimidate the faculty into silence and submission by reminding them that she was the best friend of the college president's wife. She would routinely change faculty's schedules at the last minute without any consultation with the affected faculty, including the Lead Faculty who should have been directly involved in those decisions, and made it clear to faculty that she had no need for any constructive input regarding departmental matters, because she was in charge and ran the show. In summary, from her arrival at Alamo Colleges, she was a bad boss.

3.3     However, Plaintiff Longoria soon learned that Rosalinda Ortiz was more than just a bad boss. She was a sexual abuser. In early October of 2023, Chair Ortiz decided to replace a faculty member with herself for travel to a textbook publisher's conference in Washington, D.C. alongside Plaintiff Longoria. Longoria was disgusted that he was forced to travel with Ortiz given the conduct she had displayed since her hiring. During a car ride between the airport and the conference hotel, during the conference itself, and later on in front of colleagues during a departmental luncheon, Chair Ortiz made a series of sexually harassing comments to Plaintiff, ranging from discussing her desire to engage in "hook-ups" at the conference to falsely accusing Plaintiff of having gone back to his hotel room with the conference's organizer.

3.4     Plaintiff suffered extreme mental and physical anguish over the sexual harassment, but for the next five months did not report Ortiz's sexual harassment against him out of fear of losing his job because of Ortiz's close friendship with the college president's wife. During those 5 months, Ortiz proceeded to retaliate against Plaintiff for refusing to engage in her sexual commentaries, elevating her prior "bad boss" behavior to specifically bullying and targeting

Plaintiff, and in general creating such a hostile work environment for him that he could no longer bear operating in the same workspace and communicating directly with Chair Ortiz in his role as Lead Faculty. The sexual harassment had caused him not only daily stress at work, ultimately manifesting into physical anguish in the form of high blood pressure and migraine headaches, but also had created so much stress at home that his relationship with his wife was severely deteriorating.

3.5     Feeling he had no other choice, in early March of 2024, Plaintiff finally reported the sexual harassment and retaliatory bullying and hostile work environment to his dean, provost, and Human Resources, ultimately electing to file a formal grievance against Chair Ortiz for sexual harassment under Title IX and Title VII. Plaintiff soon learned that Defendant Alamo Colleges District had no intention of taking his sexual harassment grievance seriously. Defendant went to great lengths to protect Ortiz and deprive Plaintiff of his right to adequately petition his grievance. Defendant denied Plaintiff his right to have a representative present at certain grievance meetings, and demanded complete silence from his designated representative at the meetings where a representative's attendance was permitted. The College District also made clear that it would in particular not recognize a representative from a labor union. Defendant Alamo Colleges District attempted to ignore Plaintiff's sexual harassment grievance against Rosalinda Ortiz all together, and only took any real action on the grievance after Plaintiff petitioned to an assistant chancellor over 90 days later. Plaintiff brought to his dean and provost's attention that if he had been a woman reporting sexual harassment by a male supervisor, the College District would have taken his grievance seriously, removed him from having to work with his abuser, and would have attempted to resolve the matter expeditiously.

3.6     After Plaintiff exercised his right to representation in his grievance proceedings, and his AAUP union representative formally objected to the College District's denial of such right, Defendant Alamo Colleges District began an overt scheme of retaliation, which included blocking Plaintiff from having any opportunity to have his grievance heard in a live setting (while permitting Ortiz a live hearing for her defense against Plaintiff's allegations), formally and falsely accusing Plaintiff of being uncooperative with the College District's Title IX/Title VII investigation, falsely accusing Plaintiff and his representative of violating College District policy, and requiring (against its own policy) Plaintiff to choose a different representative and one not from a union. As time went on, Defendant amplified its retaliatory conduct against Plaintiff. Over the summer of 2024, Defendant, under false pretext, removed one of Plaintiff's overload classes from his schedule, and then used a promise of returning that class to him as a "carrot" to entice him to step down from his role as Lead Faculty. The College District made it clear that if he refused to give up his leadership position, it would force him, and ultimately did force him, to communicate regularly and directly with his abuser, Rosalinda Ortiz – an ultimatum that would have not occurred had Plaintiff been a woman reporting sexual harassment by a man.

3.7     Ultimately, and not until after Plaintiff filed his Title VII charge against Alamo Colleges District with the EEOC and secured legal representation, did Defendant move Plaintiff's office to another building and restructure the entire department to report to a different chair and dean. Yet, the damage to Plaintiff by Defendant Alamo Colleges District has already been done. Defendant Alamo Colleges District used Title VII and Title IX federal parameters for investigations to preempt and deprive Plaintiff of his right to petition in the form of a unilateral presentation of his grievance through his designated and authorized union representative, as provided under Texas law, and instead turned his grievance into a bilateral and adversarial sham

investigation that squelched Plaintiff's rights to representation, free speech, free assembly, and equal protection, in its attempt to protect a favored administrator and chill Plaintiff into submission. Defendant violated Title VII of the Civil Rights Act of 1964 in discriminating against Plaintiff on the basis of sex and retaliating against him for reporting that discrimination, deprived Plaintiff of his liberty interests under the 1st, 6th, and 14th amendments of the United States Constitution by infringing on his right to petition a governing body for a redress of grievances, right to representation, and rights to free expression, free assembly, free association, and equal protection; violated the Texas Government Code provisions protecting Plaintiff's rights as a public employee regarding grievances, representation, and union membership; and breached his contract. Overall, Defendant Alamo Colleges District has severely and permanently damaged Plaintiff Tony Longoria in the form of mental and physical anguish and violation of his civil, state, and Constitutional rights, for which he herein sues.

## B. BACKGROUND AND EVENTS RELEVANT TO ALL CAUSES OF ACTION

**Chair Rosalinda Ortiz imposes her aggressive management style on Plaintiff and his Speech unit colleagues.**

3.8    For the past 10 years, Plaintiff, Samuel "Tony" Longoria ("Plaintiff" or "Longoria") taught as a full-time Instructor of Speech in the Performing and Communication Arts Department ("Department") at Palo Alto College, one of five component colleges of Defendant Alamo Colleges District. Over the past several years, Plaintiff Longoria has served in the role of Lead Faculty for the Department's Speech unit. In or around May 2023, Alamo Colleges hired Dr. Rosalinda Ortiz ("Chair Ortiz" or "Ortiz") to serve as Chair over the Department. Plaintiff Longoria, both in his capacity as Lead Faculty of the Speech unit, and as a faculty member of the Department, was directly supervised by Chair Ortiz, and was expected to be in regular direct communication with her regarding Speech unit business matters.

3.9    Prior to Ortiz's arrival at Alamo Colleges, as Lead Faculty, Plaintiff had always maintained effective, direct, and on-going communication with whomever was in the departmental chair position at the time, serving as the liaison between the chair and the Speech unit's faculty, coordinating the program's course offerings and teaching schedules and presenting them to the chair, coordinating faculty textbook adoptions and other unit matters, reviewing applications and interviewing candidates for adjunct faculty positions, hearing any concerns that may arise from his Speech faculty, and reporting Speech faculty concerns to the chair. Both as a Lead Faculty and as an accomplished Speech professor, Plaintiff Longoria had always been well-respected by his students, faculty colleagues, and prior supervisors.

3.10    Since the beginning of her stint as chair, Chair Ortiz fostered an aggressive and harsh management style against Plaintiff and other Speech unit faculty.  Chair Ortiz routinely made it clear to her subordinates that she was best friends with the wife of Palo Alto College's President, Dr. Robert Garza ("President" or "Garza"), thereby intentionally creating the impression to her subordinates that she had special influence over the college president, in an effort to chill any dissention that could arise among those faculty regarding her leadership.

3.11    In addition to reminding everyone in earshot of her close ties with President Garza's wife, Chair Ortiz fostered an aggressive, unhealthy, and harsh work environment by ignoring faculty emails for extended periods of time, particularly if those emails included concerns over Ortiz's management of the department. She threatened to remove overload classes from certain faculty within her department, and threatened to remove her subordinates' faculty travel benefits. Faculty members, including Plaintiff, complained at the time about Ortiz's conduct, through H.R., or by taking their concerns to other college administrators, but Defendant failed to make any effort

to mitigate the harsh working conditions caused by Ortiz. Defendant's inaction enabled and exacerbated the harsh working environment that Dr. Ortiz created.

**Chair Ortiz sexually harasses Plaintiff at a McGraw-Hill textbook conference.**

3.12    On October 5, 2023, Plaintiff and Ortiz flew together, as representatives for Palo Alto College, to Washington, D.C. for a McGraw-Hill publisher textbook conference. They were picked up together at the airport by the publisher, and driven to a hotel for the conference.  At the time, Plaintiff already felt uncomfortable having to fly and attend the conference with Chair Ortiz on account of the "command and control" leadership style she had already exhibited towards Plaintiff and his colleagues, and by the fact that Ortiz had blocked his Speech unit colleague, Elizabeth Ginn, from attending the conference so that she could go in his place, even though Ortiz was an administrator and the conference was specifically for faculty. During the ride to the hotel, Plaintiff and Chair Ortiz were seated next to each other in the back seat, and the space provided for them was small. Thus, by default, Plaintiff and Chair Ortiz were seated in close proximity to each other.

3.13    During the car ride from the airport, Chair Ortiz stated to Plaintiff "*these [conferences/symposiums] are good for hookups – sleeping with someone and not having to see them again – discreet, no commitments and no strings attached.*" Dr. Ortiz also stated to Plaintiff that she was going to be on the lookout for someone for her to hook-up with. Initially, Plaintiff ignored her comments, as her comments made Plaintiff feel very uncomfortable. As time passed in the car, Plaintiff responded to Chair Ortiz's comments, assuring her that he did not see it that way, as he was a married man and had no interest in engaging in that kind of behavior.

3.14    The next day, Chair Ortiz said to Plaintiff during a conference session break "*I thought you went back to your hotel room with Natalie [Graner] last night.*" Natalie Graner was

the organizer of the conference. In response, Plaintiff immediately told her that he is married and did not appreciate the comment. Plaintiff added that he was not there for the reason she was talking about. Chair Ortiz's comments made Plaintiff feel uncomfortable, disgusted, angry, and fearful of retaliation.

3.15    Chair Ortiz's conduct and comments during the conference stemmed from her position of authority over Plaintiff in efforts to force Plaintiff to engage in sexual conversations he did not wish to engage in. As a result, Plaintiff feared retaliation from Ortiz for not engaging in her desire to have these conversations.

**Chair Rosalinda Ortiz continues to sexually harass Plaintiff at a luncheon with faculty members from the Fine, Performing, Communication Arts Department.**

3.16    On or about October 17, 2023, at a routine departmental lunch meeting the day after Ortiz and Plaintiff returned from Washington, D.C., Ortiz continued her sexual harassment and sexual misconduct against Plaintiff, this time within earshot of Plaintiff's colleagues from the Fine, Performing, Communication Arts Department. In attendance were Ortiz's administrative assistant, Bobby Munoz, Professor Elizabeth Ginn, and Professor Andrea Fuentes. Within earshot of those in attendance, Chair Ortiz said that she "*thought [Plaintiff] went back to his room with Natalie from McGraw-Hill.*" Immediately after Chair Ortiz made those comments, Plaintiff stated in front of his colleagues *"[Dr. Ortiz], please stop saying that. I am a married man, and would never do anything like that.*" Dr. Ortiz's comments about Plaintiff humiliated him and exacerbated the effects of her previous conduct and comments that she made at the conference in Washington, D.C.

3.17    As a result of Dr. Ortiz's conduct, Plaintiff experienced, and is still experiencing, mental and physical anguish. Plaintiff's stress and anxiety from his chair's conduct has placed stress on his marriage and has impacted his work product at Palo Alto College.

3.18    During the next five months, Chair Ortiz retaliated against Plaintiff for not engaging in her sexual comments and innuendos. During that time, Chair Ortiz would micromanage Plaintiff more compared to others she supervised within the department. She would take over Plaintiff's assigned duties without his prior knowledge, she targeted Plaintiff for pressure to use specific course materials that she financially profited from, and kept reminding Plaintiff that she was close friends with the wife of the college president. Chair Ortiz's conduct instilled fear into Plaintiff to not report the sexual harassment he endured from Chair Ortiz. Plaintiff Longoria remained silent about Ortiz's sexual harassment and subsequent retaliatory hostile work environment against him —out of fear—for five months.

**Defendant sets in motion its strategy of denying Plaintiff's right to representation, and Plaintiff files a formal Title IX/VII grievance with Alamo Colleges District's Title IX office against Chair Rosalinda Ortiz.**

3.19    By the first week in March 2024, Plaintiff Longoria was at a breaking point over having to communicate directly with Chair Ortiz and being forced to continue suffering from her bullying and creation of a hostile work environment against him on account of his rebuking of her sexual harassment. On March 7, 2024, Plaintiff emailed his dean, Jenny Scheidt ("Dean Scheidt" or "Scheidt"), a multipage document detailing Ortiz's sexual misconduct and retaliation against him, and arranged to meet with Scheidt in her office the next day, on March 8, 2024, for Plaintiff to present his complaint to her as part of the informal grievance process. After the March 8, 2024, meeting, Dean Scheidt emailed Palo Alto College Human Resources ("HR") partner Lisset Carranza-Zuniga ("Lisset" or "Carranza-Zuniga"), copied to Provost Patrick Lee ("Provost" or "Lee") and Plaintiff, letting her know that she had met with Plaintiff and "*another faculty member,*" Tony Villanueva, as his faculty representative at Plaintiff's request. Dean Scheidt further explained to Lisset that Plaintiff had shared with her that Chair Ortiz had engaged in bullying and

inappropriate behavior against him, and that he would like to meet with her to discuss the matter, which could occur after the College District's spring break (set to occur the following week). The dean then notified Plaintiff that Lisset had asked that Plaintiff provide her with items for resolution of the complaint.

3.20    Plaintiff provided the requested list on March 13, 2024, which included a resolution that the College District implement a mandatory training program for newly hired chairpersons, to include training modules on preventing bullying and harassment. Plaintiff also declared that nothing could resolve his mental anguish, and that which Ortiz's conduct had caused to his wife, aside from Ortiz's termination and removal.

3.21    On March 19, 2024, Longoria reached back out to Dean Scheidt, documenting the latest bullying email from Ortiz, and requesting that he be allowed to hold his office hours remotely, given that being in the same workspace as Ortiz caused him deep mental anguish. The dean wrote back that day, copying Provost Lee on the email, stating she had met with Lisset Carranza-Zuniga that afternoon, and that she and Lisset would like to meet with Longoria on March 21, 2024, to discuss the Title IX grievance process. The dean also replied that she had talked with Provost Lee, and that the provost had said to hold off on Plaintiff's request for remote office hours, pending the outcome of the March 21, 2024, meeting.

3.22    Plaintiff replied on March 20, 2024, that he wished to bring Tony Villanueva as his faculty representative to the meeting. Dean Scheidt replied the same day, denying his ability to bring a representative to the March 21, 2024, meeting with HR over his grievance, stating "*For confidentiality reasons, HR has stated that any meetings going forward cannot include additional individuals, so Thursday's meeting will need to be with you, Lisset, and myself only. We will be discussing next steps for filing a grievance, potential investigation proceedings, etc*."

3.23    Plaintiff replied the next day to Dean Scheidt, Provost Lee, and HR partner Lisset, requesting Lisset's rationale for denying him his right to have a representative present at the upcoming grievance meeting that day, given that Alamo Colleges' own policies permitted it, and there was no policy stating that he could not bring a representative. Lisset responded that he was not permitted to bring a representative to the meeting because of confidentiality in discussing "personnel matters," that they were only in the "employee relations process," and that they had not yet entered the Title IX process. Lisset pressed Plaintiff that if he insisted on bringing a representative, he could cancel the meeting and instead just file a grievance. She stated that their goal, as the College District's administrators would repeat *ad nauseum* to Longoria over the next few months, was to "*ensure you are comfortable,*" and provided a link for filing a grievance in her email. Frustrated, Longoria asked for clarification of the nature of the March 21, 2024, meeting scheduled for later that day, as he had made a report back on March 8, 2024, "*regarding sexual harassment, harassment, bullying, and other items to Interim Dean Jenny Scheidt.*" Plaintiff continued "*I am a victim of sexual harassment in my workplace. On 3/13/2024, I sent an email to you, through Jenny, with my concerns and my resolution. My understanding is that today's meeting was the next step in that progression. I do not understand an informal, employee relations meeting. I do not understand why I cannot have an advisor with me today when the policies and procedures appear to clearly state that I am entitled to have one present. Yes, I would like to continue my reporting, including filing a grievance under Title IX. As for the meeting today, I cannot answer your question until I can understand the nature of it.*" A few minutes later, Lisset once again emailed Plaintiff the link to file his formal grievance, and provided the email addresses to both her direct supervisor, Uchena Spencer, and to Alamo Colleges Director of Talent and Advocacy, Alexandria Salas Navey ("Director Salas Navey" or "Salas Navey"), who is an attorney.

3.24    On account of Defendant's refusal to permit Plaintiff Longoria to have a representative at the March 21, 2024, meeting, Plaintiff resolved to cancel the meeting, and instead to just go ahead and file his formal Title IX grievance against Ortiz, using the link sent to him by Carranza-Zuniga. At the direction of Human Resources, in a series of emails that day, Plaintiff notified Director Salas Navey that he intended to file a Title IX formal grievance, and needed her assistance in doing so.

3.25    Salas Navey sent Plaintiff Longoria a link for submitting his formal Title IX/VII grievance, and after Plaintiff explained to her that multiple issues surrounding Ortiz's conduct were intertwined, told Plaintiff he could submit everything as a single report. On March 22, 2024, Plaintiff Longoria filed his formal Title IX/VII grievance against Ortiz using the link and form provided to him by Salas Navey, and she confirmed receipt of his report the same day, telling Longoria that she would "*review the information provided to determine if it meets the regulatory requirements to investigate*," and asked that Longoria giver her "*some time*" to review the information he provided. As set forth below, that "some time" ended up being over three months.

3.26    On March 26, 2024, Longoria sent a letter to Lisset Carranza-Zuniga and Director Salas Navey, copied to Dean Scheidt and Provost Lee, naming the Office of Faculty Representation of the Texas AAUP-AFT ("TXAAUP-OFR") as his designated, authorized representative. In that letter, Plaintiff granted permission for TXAAUP-OFR to be present and to speak on his behalf in all correspondences and meetings related to his filed Title IX/VII grievance. He also requested that all correspondence be sent to him solely through TXAAUP-OFR.  During this time, Plaintiff did everything he could to avoid any direct communication or contact with Chair Ortiz, including again requesting that his office hours be held remotely, which this time Dean Scheidt approved. After hearing nothing regarding his case since Salas Navey confirmed

receipt of this grievance on March 22, 2024, Longoria's union representative wrote to Salas Navey on April 5, 2024, asking her for the next steps in the process. Director Salas Navey never responded.

**The April 12, 2024, meeting – Alamo Colleges initiates its "rock and a hardplace" pressure scheme against Plaintiff to either step down as Lead Faculty or else communicate directly with his abuser, Chair Ortiz**

3.27    On April 9, 2024, Plaintiff was contacted by Dean Scheidt (copied to Provost Lee), requesting that, because he was not meeting directly with Ortiz, he meet with her and Provost Lee that week to discuss "*items pertaining to Speech so that we can continue college operations*." In the email, Dean Scheidt told Longoria that the meeting did not pertain to his grievance against Chair Ortiz. Plaintiff Longoria responded to the dean that day, requesting that he be accompanied at the meeting by a TXAAUP-OFR representative. Provost Lee then responded to Longoria, stating that he would prefer that he, Longoria, and Dean Scheidt meet without a representative present, but that if Longoria still wished, he could bring the representative.

3.28    The meeting took place on April 12, 2024, via Zoom. Plaintiff Longoria was accompanied by Tony Villanueva as a designee and Chief Correspondence Officer from the TXAAUP-OFR. Throughout the meeting, Provost Lee and Dean Scheidt related to Plaintiff's representative in his capacity as a faculty member of the College District, rather than as Longoria's union representative. After exchanging pleasantries, Dean Scheidt opened the meeting by saying that she and Provost Lee needed to discuss the "*logistics when it comes to things in the department that need to get done*," and that while she was acting as the mediary between Longoria and Ortiz, it was going to be difficult to sustain that arrangement.

3.29    As the meeting progressed, Dean Scheidt and Provost Lee detailed examples, such as Speech unit textbook selections and OER courses, as to how the arrangement of Longoria, as

Lead Faculty, not communicating directly with Chair Ortiz was creating "miscommunication" issues, despite Plaintiff making it clear that any confusion by Speech faculty over those issues was not related to him not communicating directly with Ortiz, because he had written clear emails to the Speech faculty about the issues. Provost Lee then stated to Plaintiff "*We really want to know what your comfort level is*," and then proceeded to inquire if Plaintiff wished to continue in the role of Lead Faculty. Plaintiff made it clear that he was definitely not comfortable talking with Chair Ortiz, and that he still wished to communicate with Chair Ortiz only through Dean Scheidt. Plaintiff also acknowledged that he had discussed transferring the Lead Faculty role to a colleague, Elizabeth Ginn, in the fall, if the situation with Ortiz did not improve. Provost Lee again emphasized that not communicating with Chair Ortiz in the long term was unsustainable, and pressed again for Longoria to declare his comfort level in working directly with Ortiz.

3.30    Provost Lee eventually requested that until his grievance with Chair Ortiz was "resolved," that he communicate directly with Ortiz via email. Plaintiff told the provost and dean "*I don't know what perception you guys have of me, but I want to do my job. I really do…But I've been under so much stress because of what she's done that it's been very difficult, very, very difficult.*" Longoria asked that if he were to email with Ortiz directly, he wanted to always copy Provost Lee and/or Dean Scheidt on the email, "*because a lot of the things that happened earlier that created the situation, and part of it anyway, was…I think she just realized that nobody's monitoring what she's saying, and she was threatening and doing all these things. So[,] I'm okay with communicating with her through email as long as it's not retaliative. It's not[,] it's not intimidating or punishing or trying to embarrass me.*"

3.31    Dean Scheidt stated that while she knew "*every time you are interacting with her, that that is a stressor*," and she wanted Longoria to feel comfortable, but that the Lead Faculty was

required to communicate directly and frequently with the Chair. Plaintiff's TXAAUP-OFR representative interjected, stating that given Plaintiff's on-going sexual harassment grievance against Chair Ortiz, it was in his best interest that he not communicate directly with Ortiz, and that perhaps he could be assigned to report to someone else or directly to Dean Scheidt. Provost Lee again pressed for Longoria's comfort level communicating directly with Ortiz. Longoria replied that he was caught between a "*rock and hard place*," that he was not comfortable, and that "*As I've explained in my emails, I don't even want to go to work. My wife doesn't even want me to go there. So there's really I don't think that I can answer that any other way, but I want to do my job and I will be okay corresponding through emails if they're not agenda driven and if she will cooperate and not just bark out orders and give skewed and misinformation and warp things and not give me true dates. I just need the information to do my job. If I can get just[,] just pure information, this is due on this date, I will do it and that's all I need.*" The dean replied that she could not promise "*those things*." Dean Scheidt again reiterated that with regards to Plaintiff working directly with Ortiz, "*I am concerned about the level of stress you have been operating under.*"

3.32    Despite the dean having told Longoria that the meeting would not involve discussing his grievance against Ortiz, Provost Lee asked Longoria if Human Resources ("HR") had met with him yet regarding the grievance and was surprised to learn the that HR had not yet met with him at all, and told the dean that she and he needed to address that with HR. Plaintiff's representative stated that HR's lack of response to Plaintiff's sexual harassment grievance was a "*big concern.*" Provost Lee agreed, stating "*I'm going to be blunt…it's getting a little ridiculous that that would take that long.*"

3.33    Dean Scheidt then claimed that she wanted to make "*crystal clear*" that she and Provost Lee were not asking or telling Plaintiff to step down as Lead Faculty, yet proceeded to

suggest reasons that he should consider stepping down. The provost then asked Plaintiff to ensure faculty in the Speech unit documented concerns they had with Chair Ortiz, and Plaintiff explained that that would be difficult, because they were all afraid to come forward over Ortiz's conduct, given that she was best friends with President Garza's wife. Provost Lee reiterated that he was going to reach out to HR to try to speed up the processing of Longoria's grievance against Ortiz.

3.34    Plaintiff's TXAAUP-OFR representative commented, explaining that he was concerned over HR's lack of communication on the issues, and that he was speaking as Longoria's representative from the [TXAAUP-AFT] organization that he represented, and requested that, given the nature of a Title IX complaint, instead of Provost Lee and Dean Scheidt reaching out to HR about Plaintiff's grievance, that instead he should reach out to HR as Plaintiff's representative. Provost Lee reiterated that he would be reaching out to HR.

3.35    Dean Scheidt asked Plaintiff what the date was in which he had submitted "*the appeal*," given that Longoria had discussed his concerns with her earlier as just a "*heads up*." Longoria replied that he had discussed his concerns with Scheidt on March 8, 2024, and then submitted his formal grievance on March 22, 2024. Provost Lee appeared surprised that Plaintiff's complaint against Ortiz was actually a formal grievance: "*I just want clarity because[,] I'm[,] when we have these conversations with the multiple folks in H.R., one person says this, one person says that. And my question and you just answered my question to them, is, is it a grievance? Is it not a grievance? What is it officially titled*?"

3.36    Plaintiff's representative jumped in, stating that he felt the meeting was going too far into discussions about Longoria's grievance, and that the meeting should be ended. Dean Scheidt then clearly became aware that she needed to protect the College District from Plaintiff' Title IX grievance against one of its administrators by controlling what information became

available to other faculty. Despite Provost Lee having just emphasized to Plaintiff that he needed to document concerns of other Speech faculty over Ortiz's conduct, Dean Scheidt told Plaintiff that if any faculty came to him with concerns over Ortiz's conduct, that he must immediately tell them to discuss their concerns directly with her and Provost Lee, and for Plaintiff, because of his grievance, to tell those faculty that he could not discuss their concerns with them, and to "*just cut them off*."

3.37    Six days later, on April 18, 2024, Plaintiff, highly triggered by continued retaliatory actions against him by Chair Ortiz in her purposely denying him knowledge he needed, as Lead Faculty, of critical Speech unit decisions she was making, emailed Provost Lee, Dean Scheidt, and President Garza, copying HR partner Lisset Carranza-Zuniga and Director (and attorney) Salas Navey, and his TXAAUP-OFR union representative on the email, declaring "*I cannot continue to communicate in any way with Rosalinda Ortiz based on her sexual misconduct and harassment against me. I am not sure why I thought I could communicate with her via email, but after today I am certain that I cannot do that.*" Plaintiff further explained in the email that Chair Ortiz's actions had created a "*tense and uncomfortable work environment*," and that he was therefore requesting immediate reassignment to a different chairperson, as he was "*literally unable to communicate with Rosalinda in any way*." Plaintiff also expressed in the email that he was "*very disappointed and dissatisfied with the overall response time to my complaints and grievance against Rosalinda Ortiz. My stress and anxiety are at an unsupportable level*." That same day, Provost Lee, and later that day Dean Scheidt, both emailed Plaintiff, letting him know that they would be talking to HR about his grievance and that he could email them directly going forward, instead of emailing Chair Ortiz directly.

3.38     The next day, on April 19, 2024, Director Salas Navey sent a letter to Plaintiff, acknowledging 1) her receipt of Plaintiff's submitted documents pertaining to his formal grievance against Ortiz, 2) receipt of his March 26, 2024, letter granting "*the Office of Faculty Representation of the Texas AAUP Conference and Tony Villanueva, a faculty member at Palo Alto College, to represent you in connection with all matters pertaining to your Grievance Case No.97636,*" despite Longoria having never indicated that Tony Villanueva was a faculty member at Palo Alto College, and having solely indicated Tony Villanueva's name in his capacity as TXAAUP-OFR's Chief Correspondence Officer, and 3) her receipt of Plaintiff's request to be contacted solely through his "designated, authorized representative." Director Salas Navey then went on to state that his requests that "*Tony Villanueva or other Texas AAUP member be present at any and all meetings and discussions related to "Grievance Case No. 97636," and that you be contacted solely through your 'designated, authorized representative' is denied*." Salas Navey went on to state that "*No College District procedure provides for employee representation as you have requested. The College District will not recognize a representative as you have requested*," and indicated that he could have a representative that would act as an advisor as provided under Board Procedure H.1.2.1, the policy under which Longoria's sexual harassment complaints against Ortiz was being grieved, or would be grieved.

3.39     On April 20, 2024, Plaintiff received another email from Dean Scheidt, letting him know that she had directed Chair Ortiz not to email Plaintiff directly going forward, even on departmental emails, and that she must instead send emails through her.

3.40     While Defendant Alamo Colleges District had already made it clear that it was not willing to recognize Plaintiff's union representation via Salas Navey's April 19, 2024, letter and its ignoring TXAAUP-OFR's letters regarding its representation of Plaintiff, and by the fact that it

had already expressed, through Provost Lee, that it would "prefer" Longoria's representative not be present at the April 12, 2024, meeting, from Provost Lee's and Dean Scheidt's emails on April 18, 2024, and April 20, 2024, it became very evident that Defendant Alamo Colleges District fully intended to infringe on Plaintiff's right to union representation, or to engage in any conduct to recognize, in any respect, a union. It did this by specifically and purposefully removing Plaintiff's union representative from the cc line of their emails (despite Plaintiff's prior multiple written requests to Alamo Colleges that all communications be solely through that representative, or at least that the representative be copied on all communications), while keeping all others on the email who Plaintiff had originally included in his April 18, 2024, email to them.

3.41    On behalf of Plaintiff Longoria, on April 26, 2024, Plaintiff's TXAAUP-OFR representative sent a letter to Director Salas Navey, formally objecting to any infringement on Longoria's right to representation, as Salas Navey had indicated Alamo Colleges District intended to do, in her April 19, 2024, letter. In their letter, TXAAUP-OFR detailed that state statute *Texas Government Code 617.005* and the Texas Court of Appeals case *Lubbock Pro. Firefighters v. Lubbock (742 S.W.2d 413 (Tex. App. 1987)* provided held that a public employer cannot limit a grievant's right to have their chosen designated representative (which may be either an individual or a group, including a labor union, that does not claim the right to strike) present their grievance, even in the absence of the grievant. TXAAUP-OFR made it clear in its letter to Salas Navey that it does not claim the right to strike.

3.42    Neither Salas Navey, nor anyone from Defendant Alamo Colleges District, ever responded to TXAAUP-OFR's April 19, 2024, letter and formal objection, and no events transpired regarding Plaintiff's grievance during May 2024. During that month, Plaintiff continued to conduct Speech unit business, as Lead Faculty, using Dean Scheidt as a "go-between" for

communicating with Chair Ortiz, as Dean Scheidt and Provost Lee had arranged. On June 7, 2024, Dean Scheidt emailed Longoria, referring to "hiccups" in the Speech unit and indicating she was dealing with the "communication issue" and "*the extra steps involved in sending items to me from both sides*." Dean Scheidt then arranged for a meeting between her and Longoria to take place on June 10, 2024. Plaintiff emailed Scheidt, requesting to have his representative sit in on the meeting. Dean Scheidt denied Plaintiff's ability to have his representative present, stating that she would only meet with him directly, claiming that the meeting would only encompass discussing "*lead duties and clarifying responsibilities for the summer*."

3.43    However, just as with the Colleges District's failed promise that the meeting would not involve discussion over his sexual harassment grievance against Chair Ortiz, the June 10, 2024, meeting inevitably did refer to Longoria's sexual harassment grievance against Ortiz. During the meeting, Dean Scheidt complained that Longoria's unwillingness to communicate directly with Ortiz was causing problems and creating "*extra steps*." She also acknowledged that Chair Ortiz had exhibited poor leadership and communication skills and had infringed on academic freedom with respect to textbook choices in her dealings with Plaintiff and his faculty colleagues.

3.44    By the end of June, 2024, Defendant, which still had not taken any further action to address Plaintiff's grievance, increased its retaliatory pressure on Plaintiff to step down from his Lead Faculty role if he refused to communicate directly with the woman who had repeatedly sexually harassed him and created a hostile, bullying work environment against him because he rebuked her sexual advances and later complained about them.  On June 26, 2024, Dean Scheidt demanded to meet virtually with Plaintiff while he was on a family trip in Brazil. During the meeting, Dean Scheidt emphasized that the current arrangement of having her serve as a mediary between Plaintiff and Ortiz was creating "gaps in communication" and delays. She specifically

detailed a concern brought to her by Elizabeth Ginn, who was interested in taking over Longoria's Lead Faculty role in the fall, regarding confusion among Speech faculty regarding textbook adoptions. Longoria clarified that there was no basis for confusion, as he had sent out clear email communication regarding the matter. Plaintiff also further explained that Ortiz had infringed on the faculty's academic freedom in selecting textbooks, and specifically had wanted the faculty to adopt a McGraw-Hill Publishers textbook. Ortiz had also negotiated for McGraw-Hill to sponsor an Italian restaurant luncheon that past semester for the Speech faculty. During the meeting, Plaintiff also highlighted that he was unable to attend a virtual training sponsored by Pearson publishers, because Ortiz had improperly inserted herself into that meeting.

3.45    Plaintiff suggested that he, Elizabeth Ginn, and Dean Scheidt meet together to clarify the textbook situation, which Dean Scheidt agreed to. The dean then followed by asking Plaintiff if he wanted to continue as Lead Faculty in the fall. Plaintiff Longoria replied that he did not want to give up his Lead Faculty role, and that he thought it would be unfair for him to have to do so. Dean Scheidt next pointed out that the Lead Faculty role included some "release time" from teaching duties, and that Chair Ortiz had pointed out to her that Plaintiff was currently scheduled to teach eight courses in the Fall, and that Plaintiff would have to drop one of his overload courses because "*they*" were not going to approve "triple overloads" (despite Plaintiff having been approved to teach eight courses for the past two semesters). Dean Scheidt then proceeded into what Plaintiff viewed as a bribe to get him to relinquish his Lead Faculty position: "*I'm going to say put a pin in that. I don't want to talk about dropping a course from your load. Um, because it could possibly be something where we do approve you for eight if, um, you know, if you need to, to basically temporarily not serve as the as the Lead instructor in the fall…*"

3.46    Elizabeth Ginn, Dean Scheidt, and Plaintiff met virtually the next day, on June 27, 2024, to clear up Professor Ginn's confusion over the textbook adoption matter. During that short meeting, the dean again complained that Longoria not talking directly to Ortiz was complicating the situation. Dean Scheidt's constant complaining over Plaintiff not communicating directly with his abuser had become too much for Plaintiff. He stated: "Jenny, can I just. I know you have to go. You have just a few minutes. Um, but I want to voice this concern, especially while Elizabeth is here. I am not comfortable stepping down as the Lead to accommodate Rosalinda. I just want to put that out there." and in response to the dean's claim that she was not asking him to step down, continued "*Okay. I do feel pressure, I do. I'm going to be honest. I do feel pressure to do something because I know it's frustrating for you and I know it's very difficult. Patrick had mentioned it in April, and I think I felt like I wanted to somehow accommodate it, but I really don't think it's fair. Like I said yesterday, that I would have to step down just to alleviate the situation. I didn't start the situation. It didn't originate with me*." Dean Scheidt reiterated that she was not asking him to step down, but that if the "situation" continued into the fall, they would have to reassess the situation.

3.47    Despite Provost Lee and Dean Scheidt's assurances to Plaintiff during their April 12, 2024, meeting and April 18, 2024, email that they would immediately contact Human Resources in an effort to speed up the College District's response to Plaintiff's Title IX grievance, by July 2024, Plaintiff Longoria still had received no response or movement on his grievance. In an effort to get his complaint addressed, Longoria emailed Alamo Colleges Title IX Coordinator and Associate Vice Chancellor of Talent, Organization, and Strategic Initiatives at Alamo Colleges, Linda Boyer-Owens ("Associate Vice Chancellor Boyer-Owens") on July 1, 2024, notifying her that he had filed his grievance back on March 22, 2024, but had not heard anything from the

College District since April 19, 2024 regarding his grievance, when he was told that someone would be in touch with him regarding next steps.

3.48    Longoria never a receive a response form Associate Vice Chancellor Boyer-Owens, but the next day, on July 2, 2024, Plaintiff received an email from Alexandra Rodriguez Figueroa ("Rodriguez Figueroa"), Director of Student Conduct and Title IX at the College District's St. Philips College, informing Plaintiff that she and Joffre Miller ("Miller"), Human Resources Partner at the College District's San Antonio College, would be investigating his Title IX complaint against Chair Ortiz under Alamo Colleges H.1.2.1 Procedure: Civil Rights Complaints and Resolution Procedure. Rodriguez Figueroa also requested that Longoria meet with her and Miller via Zoom on July 8, 2024, at 10:30am.

3.49    At 7:29am on July 8, 2024, Longoria received an email from Director Salas Navey, copied to Rodriguez Figueora and Miller, but not to Longoria's previously designated and authorized TXAAUP-OFR representative, stating that while Longoria was permitted to have an "advisor" at the Title IX meeting set to take place three hours later at 10:30am, but the "*advisor is not allowed to speak on your behalf.*" Under advisement by his TXAAUP-OFR representative, Longoria did not respond to the Salas Navey's email, but planned to have his representative make a formal objection to the email and what he perceived as infringement on his right to representation at the beginning of the 10:30am meeting.

**July 8, 2024, Alamo Colleges refuses to recognize Plaintiff's representative, or the law protecting his right to have her advocate for him**

3.50    In attendance at Longoria's July 8, 2024, Title IX Zoom meeting was Plaintiff Longoria, Miller, Rodriguez Figueroa, and a designee from TXAAUP-OFR serving as Longoria's union representative. At the very start of the meeting, after confirming all attendees were present and they were ready start, without any greeting to Longoria, Miller opened the meeting in an

aggressive tone, asking, "*Mr. Longoria, did you receive an email this morning from Alex Salas Navey, explaining about…*" Plaintiff's union representative then explained to Miller that she was a designee from the TXAAUP-OFR, who Longoria had previously designated and authorized to Alamo Colleges as his representative in two letters, on March 26, 2024, and April 5, 2024, and that she wished to make a formal statement on Longoria's behalf regarding the email Longoria received that morning from Salas Navey. Miller cut the representative off and said "*No statements. There's no statements.*"

3.51    Longoria's representative then stated, "*We're making a formal objection at this point, sir, regarding any restriction or infringement on his right to representation.*" Miller ignored the representative's formal objection, and immediately asked Longoria again if he understood him regarding Salas Navey's email to him that morning, which declared Longoria's advisor would not be permitted to speak. The representative again pressed the objection, stating that Longoria and the TXAAUP-OFR objected to any infringement on Longoria's right to representation as a deprivation of his liberty interest under the U.S. Constitution and other rights under Texas Government Code 617.005, and case law. Longoria's representative cited to Miller *Lubbock Pro. Firefighters v. Lubbock* (742 SW 2d 413 - Tex: Court of Appeals), explaining to him that the court held in that case that a grievant of a public institution may present a grievance to the institution either themself or through a representative the grievant had designated, even in the absence of that grievant.

3.52    Miller continued to ignore the objection, asking Longoria once again about the email, and the representative again stated that Longoria had received the email and made a formal objection to it. When Miller finally allowed the meeting to proceed, he first replied *"Okay. Wow. That's a way to get started, I guess."* Miller then continued to start the meeting, identifying the

purpose of the meeting and citing Alamo Colleges H.1.2.1 and Title VII of the Civil Rights Act of 1964. Miller then asked Longoria of he understood that. The next exchange between Miller and Longoria's representative was as follows:

> **TXAAUP-OFR Representative:** *Yes, he understands.*
> **Miller:** *Please don't respond.*
> **TXAAUP-OFR Representative:** *Well, again, we can respond on his behalf if he so desires.*
> **Miller:** *We're not going to do this.*
> **TXAAUP-OFR Representative:** *Okay. Um, you're intending to infringe on his right to representation?*
> **Miller:** *That's corre...I'm. I'm telling you, you're not allowed to speak during this. You're not allowed to speak during this.*
> **TXAAUP-OFR Representative:** *Uh, we object to that.*

3.53    Miller then asked Longoria how he wanted to move forward, and Longoria replied that we wanted to continue with the meeting, and he didn't see what the problem was. Longoria asked Miller if he understood that he had the right under Alamo Colleges policy for his representative to speak on his behalf. Miller replied that they did understand that. Miller and Rodriguez Figueroa then both indicated that they did not want to move forward with the meeting.

3.54    Longoria's representative then asked Miller if he was denying Longoria's right to present a case under Title VII, since Miller did not want to move forward with the meeting. Miller replied, "*No comment,*" and later that he was not saying that he was denying Longoria the right to present under Title VII, but that the meeting could not proceed.

3.55    Plaintiff's union representative and Miller continued to go back and forth for about five minutes regarding Longoria's right to representation at the meeting, specifically regarding his representative's right to speak on his behalf. Eventually Longoria's representative emphasized that nothing in Alamo College's own policy, H.1.2.1, barred the grievant's representative from speaking on the grievant's behalf. Rodriguez Figueroa then said the meeting should be rescheduled for "tomorrow or Thursday" because of the things Longoria's representative was stating and Miller and Rodriguez Figueroa's need to consult with their supervisor. Longoria's representative raised

an additional formal objection to the fact that the College District had failed communicate to Longoria through his representative as he had requested, or even to copy Longoria's representative on any communications related to his grievance, despite Longoria's March 26, 2024, and April 5, 2024, written requests that the College District do so. The representative asked that the College District honor that request going forward. Rodriguez Figueroa replied "*Okay. It's been noted.*"

**Defendant retaliates against Plaintiff for exercising his right to representation**

3.56    In response to Plaintiff's insistence on exercising his right to representation, Alamo Colleges took swift retaliatory action against Plaintiff. Just one day after shutting down Plaintiff's Title IX/Title VII Sexual Harassment grievance meeting because Plaintiff had insisted on his representative being able to speak on his behalf, on July 9, 2024, Plaintiff received an email from Dean Scheidt, instructing him that he was required to immediately give up one of his Fall 2024 overload courses, stating "*At this time, faculty cannot be scheduled for more than 7 courses, and triple overloads are only approved under special circumstances, such as immediately after the retirement incentive.*" The Dean's edict came despite the College District having permitted Longoria to teach triple overloads the previous two semesters.

3.57    After over week had gone by since Rodriguez Figueroa's promise to reschedule the July 8, 2024, meeting for the "next day or Thursday," Plaintiff's representative reached out on July 16, 2024, via email to Director Salas Navey. In that email, which was copied to Plaintiff, Longoria's TXAAUP-OFR representative recounted to Salas Navey the conduct of the investigators towards Plaintiff and his representative, stating "we were appalled at the investigators' unprofessional, non-neutral conduct and furtive efforts to infringe on Prof. Longoria's right to representation in denying his representative's ability to speak on his behalf when he so desired." The email went on to site that despite the investigators' promise to promptly

reschedule the meeting, no notification was made to that effect, despite the College District continuing to interview witnesses in the matter.

3.58    Attorney and Title IX Director Salas Navey never responded to the TXAAUP-OFR's July 16, 2024, email. However, two days later, on July 18, 2024, Director Salas Navey resolved to retaliate against Plaintiff by writing two correspondences to him, both accusing him of having been uncooperative during the investigation, accusing his representative of having been disruptive during the July 8, 2024, meeting, and claiming both Plaintiff and his representative had violated Alamo Colleges policy (without citing which policy she felt was violated). One of the correspondences was an email in which Director Salas Navey wrote to Plaintiff "*your lack of cooperation has created a delay in the investigation*." Salas Navey went on in the email, falsely accusing Longoria's TXAAUP-OFR representative, who had been professional but firm in her insistence of Plaintiff being able to exercise his rights, of being "*disruptive and failed to follow the Alamo colleges policy.*"

3.59    While at the same time accusing Plaintiff Longoria's representative of failing to follow Alamo College's policy, Salas Navey literally violated Alamo Colleges policy H.1.2.1 in the very next paragraph, mandating to Plaintiff "*That advisor is no longer allowed to advise you in this process. Once you have chosen a different advisor to advise you in this process and provide me with their email so that I can ensure they are copied in all future correspondence. I will not send any correspondence to a general email accounts (i.e. organizational accounts), I will need the direct email of your advisor.*"

3.60    Alamo Colleges policy H.1.2.1: Equal Right to an Advisor includes the following:

"The parties will have equal opportunities to have others present during any grievance proceeding, including the opportunity to be accompanied to any related meeting or proceeding by the advisor of their choice, who may be, but is not required to be, an attorney, and not limit the choice or presence of advisor for either the complainant or respondent in any meeting or grievance proceeding."

3.61    Salas Navey's second correspondence to Plaintiff on July 18, 2024, included written interview questions for him to answer, accompanied by a letter from Salas Navey reemphasizing to Plaintiff "*Your lack of cooperation to adhere to Alamo District policies has created a delay in the investigation of your complaint.*"

3.62    Per Director Salas Navey's request, Plaintiff timely submitted his answers to the written interview questions on July 25, 2024. He never received any response or confirmation of receipt. Frustrated by the discrimination, retaliation, and violation of his rights by Alamo Colleges, Plaintiff Longoria obtained legal counsel and filed a charge with the EEOC and Texas Work Force Commission's Civil Rights Commission Civil Rights Division against Alamo Colleges (charge number 450-2024-10246) on July 30, 2024, for violation of Title VII of the Civil Rights Act for discrimination and retaliation against Longoria on the basis of sex. Two days later, Longoria's legal counsel notified the College District of its representation of Longoria and that a Title VII charge was being filed.

3.63    On August 8, 2024, Plaintiff, suffering on-going mental anguish on account of Chair Ortiz's sexual harassment and the College District's discriminatory and retaliatory conduct against him on account of his Title IX/Title VII grievance, and wishing to avoid facing his abuser, Plaintiff emailed Dean Scheidt, explaining that he was uncomfortable attending the upcoming in-person departmental meeting, knowing that Chair Ortiz would be present.  Longoria requested from the dean that he either be allowed to attend the departmental meeting remotely, or else be exempt from the meeting. Dean Scheidt responded (copied to Provost Lee) on August 13, 2024, informing Longoria that attending remotely was not an option, and that his in-person attendance at the meetings, set to take place August 20, 2024, was "*required*."

3.64    At Dean Scheidt's mandate, Plaintiff apprehensively attended the required August 20, 2024, Convocation and two departmental meetings in person. Plaintiff Longoria dreaded being within close physical proximity to Ortiz, but his attendance forced him to endure just that. As he had feared, Alamo College's demand that Plaintiff attend the meetings in person, despite knowing that would mean that Plaintiff would be forced to be in the same room with Chair Ortiz, exacerbated Plaintiff's mental and physical anguish. As Chair, Ortiz led the departmental meetings. Plaintiff could not bring himself to look at Ortiz at all, including during her speeches to the department, and in fact, the sound of her voice was tortuous to Plaintiff. During the meetings, Plaintiff became extremely emotionally distressed, restless, and could not focus on the content of the meetings. He felt unsafe and wanted to cry, scream, and walk out of the room. Plaintiff's emotional stress rapidly turned into physical stress. He quickly developed a migraine headache, and could feel that his blood pressure, which was already high due to the months of stress at the hand of Ortiz and Alamo Colleges, became even more elevated.

3.65    Dean Scheidt, who was present during the departmental meeting on August 20, 2024, "*as a third party just to make sure everything went okay,*" also noticed Plaintiff's clear mental anguish during the meetings. During an August 22, 2024, in-person meeting between herself, Longoria, and Provost Lee, Dean Scheidt, regarding Longoria's demeanor during the August 20, 2024, department meetings, related to Longoria "*I could tell you were distressed.*"

3.66    However, the dean's observation of Longoria's mental anguish did not prevent her, Provost Lee, and Alamo Colleges from then, in the same meeting, mandating that Plaintiff engage, going forward, in direct, one-on-one interaction with his abuser, Ortiz. During the August 22, 2024, meeting, while Dean Schmidt and Provost Lee professed to Plaintiff *ad infinitum* that they wanted him to be "comfortable" and were willing to relocate his office, in the same meeting, the

Provost and Dean gave Plaintiff an ultimatum that he either step down as Lead Faculty, or would be forced to communicate regularly and directly with Chair Ortiz.

3.67    In conjunction with their mandate that Plaintiff either work directly with the woman who had repeatedly sexually harassed and bullied him or else lose his title and position, the administrators, through a veiled bribe, also suggested to Plaintiff that if he chose to step down as Lead Faculty, they might give him back the overload class they had stripped from him over the summer, which the College District and its administration had done in clear retaliation for his and his representative's insistence on Plaintiff being able to exercise his right to representation. In any event, as Dean Scheidt and Provost Moss explained to Plaintiff that even if he were to give-up his role as Lead Faculty, the College District would still require him to communicate directly with Chair Ortiz, just not as often as he would be required to do if he chose to remain in the Lead Faculty role.

3.68    Plaintiff Longoria made clear to Dean Scheidt that he was not comfortable with having to communicate directly with Ortiz, telling the dean "*And I understand and I know it puts stress on you because you're an intermediary and there's things slipping out, you know, but I, I cannot fathom communicating to somebody who has sexually harassed me…Like even a direct email. It's very triggering. So yeah, I don't know what to do now.*" Scheidt's response was that she "*get[s] it.*"

3.69    Later in the meeting, Longoria reiterated to both Dean Scheidt and Provost Lee his shock that he was being required to communicate directly with his abuser, and that if he had been a female who was sexually harassed by a male boss, Alamo Colleges would have treated the situation differently: *"You know, it's hard. It's hard to even imagine it. You know, somebody who has sexually harassed you on multiple occasions. I don't know how I can even be asked to be the*

*Lead and communicate with her directly. I think if it was a male boss and a female subordinate, this wouldn't even be a conversation. But that's just my opinion."* Scheidt brushed off Longoria's concern that his sexual harassment complaint was not being taken seriously by the College District on account of him being a male sexually harassed by a female, reiterating to Longoria that in order to continue to be Lead Faculty, he would have to communicate directly with Ortiz: "*Okay. Keeping that in mind, though. Okay. No one's asking you to be the lead.*"

3.70    Two days later, on August 24, 2024, Longoria emailed Dean Scheidt, explain to her that he felt the College District was forcing him into a wrong and false choice: "*After reflecting on Thursday's meeting, I am again convinced I am not capable of interaction, communication, or even being in the same room with Rosalinda Ortiz. As you know I have filed a grievance against her for sexual harassment and bullying, among other reasons. I do not believe I should have to step down as discipline coordinator to avoid communication with her, and I do not believe I should have to communicate directly with her in any capacity.*" Dean Scheidt did not respond to that email.

3.71    Nonetheless, for the next couple of weeks, Plaintiff made a good faith effort to comply with Alamo Colleges' demand that Plaintiff communicate directly with Ortiz, while copying Dean Scheidt on the communication as a third party. This caused Plaintiff continuing mental anguish, to have to directly address his abuser. Eventually, the mental anguish became too much to bear for Plaintiff.

3.72    On September 9, 2024, Plaintiff emailed Chair Ortiz directly, as he was being compelled to do by the College District, regarding an issue over hiring an adjunct for the Speech unit. Longoria copied Dean Scheidt on the email, but placed the following disclaimer at the top of the email, emphasizing that he was corresponding with Ortiz under duress and only because he

was being forced to by Alamo Colleges in order to keep his Lead Faculty position. Longoria also indicated that that he was currently in anticipated or pending litigation against Alamo Colleges, and had filed a Title VII charge against Alamo Colleges, and that any questions should be directed to his attorney:

> *"Please note that I maintain my previous and repeated objection to my being required to have any form of communication, particularly direct communication, with Chair Rosalinda Ortiz on account of her repeated sexual harassment of me. I am currently in anticipated/pending litigation over this matter and have filed a Title VII charge against Alamo Colleges. I feel I have been subjected to repeated prohibited retaliation, as well as infringement on my right to representation, by Alamo Colleges and its administration on account of my current formal grievance and current and prior complaints regarding the sexual harassment and bullying that has occurred against me by Chair Ortiz, as well as for my repeated requests that I not be required to have direct communication with her on account of the sexual harassment she has committed against me. However, as the college and its administration have improperly forced me to correspond with Chair Ortiz against my will in order to remain in my coordinator role, I do so here under duress. Please note this formal objection remains in effect for all future such communications I am being required to have with Chair Ortiz, as those communications will be made under duress also. Should you have any questions, please contact my attorney."*

3.73    Plaintiff was notified by Director Salas Navey on September 9, 2024, that a preliminary report, completed two weeks prior (August 26, 2024), had been completed, and that Plaintiff would have 5 days to respond. Despite the inappropriately short notice, Plaintiff nonetheless timely submitted his response to the preliminary report on October 3, 2024, directly refuting Ortiz's false claims and the College District's claim regarding Plaintiff's representative and what transpired at the July 8, 2024, Title IX/VII grievance interview.

3.74    On October 10, 2024, nearly seven months after Longoria filed his sexual harassment grievance against Chair Ortiz, the College District finally issued a Final Investigative Report. Both the investigation itself, and the Final Investigative Report, were completed by Miller and Rodriguez Figueroa – the same investigators who had refused Plaintiff's right to representation and other rights, falsely reported to Salas Navey that Plaintiff was uncooperative and that he and

his representative had violated Alamo Colleges policy, and failed to ever provide Plaintiff with a rescheduled live interview, despite their promise to do so. The Final Investigative Report also included irrelevant and hearsay material, such as a text conversation among three faculty, which did not include Plaintiff, regarding a restaurant they had gone to that had "bikini girls." Included in the report was a photograph of one of the "bikini girls," depicting her from behind in a thong bikini. That material, along with other materials such as other text conversations, were not included in the preliminary report, and thus Plaintiff had never seen them not had a chance to respond to them. The response Plaintiff had submitted on October 3, 2024, was included at the very end of the report and not referenced in the body of the report.

3.75    Miller's and Rodriguez Figueroa's biased investigation concluded that Ortiz's conduct did "*not rise to the level of sexual harassment and does not support a violation of Alamo Colleges District Policy and Procedure H.1.2 and H.1.2.1 on Civil Rights Discrimination, Harassment, and Retaliation*," although "*the investigation warrants a recommendation to PAC Leadership to address behavior and confer with the Employee Relations department regarding leadership expectations of Respondent- Dr. Ortiz, as a new supervisor.*"

3.76    On October 28, 2024, Plaintiff, through his attorney, requested a copy of the Provost's response to the Final Investigative Report. The College District ignored that request. On December 6, 2024, Provost Lee and Dean Scheidt called a meeting with the Speech unit faculty, letting them know that Alamo Colleges had decided to restructure all Speech unity faculty to another department, and would report to a different Chair and Dean. While Longoria would be having his office relocated into a different building, most of the other faculty would not, and would still be housed in the same building as Ortiz.

3.77    Longoria raised the point during the December 6, 2024, meeting that he felt it was unfair to "move" the Speech unit without actually physically moving its faculty, and that if the College District had simply moved Ortiz's office, there would be no need for him to move his, as he would be content in his current office. Here instead, Alamo Colleges chose to protect Ortiz, the female best friend of the college's President Robert Garza, permitting her to remain in her current office, while forcing her male sexual harassment victim, Plaintiff Longoria, to move his office in order to avoid face-to-face interaction with her. Instead of terminating or even disciplining Ortiz for her egregious wrongful conduct, Defendant Alamo Colleges rewarded her behavior in November 2024, sending her and a colleague friend on an all-expense paid trip to the Macy's Day Parade in New York City, without any justifiable academic reason for doing so.

3.78    Had Chair Ortiz been a male and Plaintiff Longoria a female, and had Plaintiff not been a member of the Texas AAUP-AFT union, it is more likely than not that Alamo Colleges would have treated Plaintiff's sexual harassment grievance very differently. Had Ortiz been male and Plaintiff female, and had Plaintiff not been a member of a union, Alamo Colleges would not have subjected him to the same degree of discrimination, retaliation, and violation of his Constitutional and other rights, and he would not have suffered as high a degree of mental and physical anguish caused by Defendant.

3.79    Chair Rosalind Ortiz subjected Plaintiff Tony Longoria to repeated, severe, and pervasive sexual harassment, bullying, and retaliation, and created a prohibitively hostile work environment for Plaintiff, causing him severe and persistent mental and physical anguish. On account of Plaintiff being a male alleging sexual harassment by his female supervisor, Defendant Alamo Colleges District failed to take Plaintiff's formal grievance seriously and failed to take proper actions to protect Plaintiff, instead choosing to protect Ortiz, facilitating her wrongful

conduct against Plaintiff. Defendant Alamo Colleges then launched a retaliatory campaign against Plaintiff for filing his sexual harassment grievance under Title IX and VII by egregiously violating Plaintiff' rights to representation, free speech, free assembly, and right to petition on account of his male sex and his union membership. While repeatedly asking Plaintiff his "comfort level," the administrators blatantly prioritized their own comfort, and that of the chair.

3.80    Defendant's retaliatory actions included, but were not limited to, removing an overload class from his schedule, thereby denying him the associated overload pay, requiring Plaintiff to communicate directly and one-on-one with his abuser or else face demotion in the form of loss of his Lead Faculty role, bribing him to step down from his leadership role in exchange for getting his stolen overload class back, and denying Plaintiff the right to have his Title IX/VII sexual harassment grievance against Ortiz heard in a live interview despite Defendant's promise to the contrary. Through its wrongful conduct, Defendant Alamo Colleges violated Plaintiff's Longoria's civil rights under Title VII of the Civil Rights Act of 1964 by discriminating and retaliating against him on the basis of his male sex and gender, knowingly deprived him of his property and liberty interests under the 1st, 6th, and 14th amendments of the United States Constitution, violated Plaintiff's rights under the Texas Government Code, and breached his contract. As set forth below, Plaintiff Longoria has filed his charge of discrimination with the EEOC and has received his notice of right to sue, indicating that he has exhausted his administrative remedies.

## IV.  CAUSES OF ACTION

4.1    *Alternative Pleadings*.  To the extent necessary, each of the claims set forth below is pleaded in the alternative, and all allegations contained in each count below are incorporated into each other count by this reference. Further, to the extent necessary, all allegations set forth above in Section III. Factual Background (paragraphs 3.1 through 3.80) of this Complaint are

hereby referenced and fully incorporated in each of the claims below by this specific reference, as though set forth in full.

***42 U.S.C. § 2000e et seq.: Discrimination and Retaliation on the Basis of Sex***
**(Counts 1 and 2)**

**Count 1:   Discrimination on the basis of sex under Title VII**

4.2     Title VII of the Civil Rights Act of 1964 prohibits discrimination based on sex, race, color, religion, disability, ethnicity, and national origin. *See* 42 U.S.C. §2000e-2(a)(1).

4.3     On or about July 30, 2024, Longoria signed and submitted an EEOC charge against Alamo Colleges District for discrimination on the basis of sex, also alleging retaliation. His charge was assigned EEOC Number 450-2024-10246.

4.4     On October 10, 2024, Longoria received his right to sue notice, giving him ninety days, until January 8, 2025 to file suit under Title VII, and he has timely brought this lawsuit, within ninety days of his receipt of the notice letter.

4.5     Incorporating all of the allegations set forth in Section III of this Complaint, Defendant has, through its employees, discriminated against Plaintiff in the terms, conditions, and privileges of his employment, on the basis of sex, treating him differently, and less favorably than a female complainant would be treated, and treating Chair Ortiz differently, and more favorably, than a male department chair would be treated if accused of sexual harassment. On information and belief, Defendant has treated sexual harassment accusations differently under such circumstances. Defendant's discriminatory treatment of Plaintiff's sexual harassment complaint has caused damage to Plaintiff for which Plaintiff Longoria, having exhausted his administrative remedies, now sues.

**Count 2:  Retaliation for Protected Activity, including opposing and reporting practices which violate Title VII**

4.6     Title VII also prohibits harassment and retaliation by an employer against an employee who opposes an employment practice that violates Title VII. *See* 42 U.S.C. § 2000e-3(a). As set forth above, Defendant experienced multiple instances of sexual harassment by Chair Ortiz and multiple instances of retaliation by her, in the form of on-going bullying, micromanaging, harassment, and the creation of a hostile work environment, in retaliation for Plaintiff rebuffing her unsolicited and unwanted sexual advances, his refusal to participate in sexually-charged banter, and his speaking up against her suggestive comments and accusations. Plaintiff also experienced retaliation by Alamo Colleges District, through the College District's administrators, for reporting the sexual harassment Longoria experienced at the hand of Chair Ortiz. The reporting was protected activity pursuant to Title VII, and by retaliating against Plaintiff Longoria for such reporting, Defendant Alamo Colleges District violated Title VII.

4.7     The harassment and retaliation Plaintiff experienced by Alamo Colleges District and its administrators, including the conduct set forth above, have caused actual damages to Plaintiff Longoria, for which, having exhausted his administrative remedies, he now sues, seeking all relief permitted under Title VII.

*42 U.S.C. § 1983.: Denial of Liberty Interests in the 1st, 6th, and 14th Amendments*
**(Counts 3 and 4)**

4.8     The violations of federal statutes and the United States Constitution complained of herein were done by state actors—Alamo Colleges District and its administrators, to which its board had delegated decision-making and policy-making with regard to Plaintiff. In the alternative, the ultimate policy-makers of Alamo Colleges District, including its chancellor and its board, were

aware of and ratified all conduct complained of herein. All actions and decisions complained of herein were made by policymakers of the institution, acting under color of law.

**Count 3:   Violation of the First Amendment Brought Pursuant to 42 U.S.C. § 1983: Freedom of Association, Right to Petition, and Freedom of Assembly**

4.9     The First Amendment applies to Defendant herein, and 42 U.S.C. § 1983 provides a mechanism for Plaintiff to recover for his injuries resulting from Defendant's deprivation of his Constitutional rights. Here, Defendant violated Plaintiff's constitutional rights by depriving him of freedom of association, right to peaceably to assemble, and right to petition for redress of grievances.

4.10    Plaintiff's  membership in the Texas AAUP-AFT union, and his representation by that union, were protected by the First Amendment's Right to Petition and Freedom of Assembly clauses. Plaintiff, both formally and informally, attempted to petition Defendant for a redress of his grievances over the sexual harassment, bullying, and hostile work environment to which he was subjected. Defendant denied him his right to petition based on his membership in the Texas AAUP-AFT union, and his insistence on being represented by a Texas AAUP-AFT union representative.

4.11    As set forth above, Plaintiff's membership and participation in the Texas AAUP-AFT, protected by the First Amendment, was infringed by Defendant, which denied him due process in the grievance process, thereby both (1) denying him the ability to exercise his First Amendment rights, and (2) retaliating against him for attempting to do so. In both ways, Defendant wrongfully infringed Plaintiff's rights to assembly, to association, and to petition.

4.12    Alamo Colleges District' policymakers, including its Board and the administrators to which the Board delegated policymaking regarding Civil Rights grievances, were the driving force behind the deprivation of First Amendment rights and the retaliation against Plaintiff for

exercising or attempting to exercise his First Amendment rights. This deprivation and retaliation has proximately caused damage to Plaintiff in the form of severe mental and physical anguish. He sues here to recover damages for such injuries, as well as for nominal damages, if appropriate, and for equitable relief as may be necessary or appropriate to remedy these injuries.

**Count 4:  Violation of the Sixth and Fourteenth Amendments Brought Pursuant to 42 U.S.C. § 1983 – Right to Representation; Procedural Due Process and Equal Protection of the Laws**

4.13    The Sixth and Fourteenth Amendments apply to Defendant herein, and 42 U.S.C. § 1983 provides a mechanism for Plaintiff to recover for his injuries resulting from Defendant's deprivation of his Constitutional rights. Here, Defendant violated Plaintiff's constitutional rights by depriving him of the assistance of his chosen representative, as contemplated by the Sixth Amendment and guaranteed by Texas law, and in so doing deprived him of his property interest in the written policies of Alamo Colleges District to be free from sexual harassment and to have his grievances heard, without due process, depriving him of freedom of association, right peaceably to assemble, and right to petition for redress of grievances.

4.14    As set forth above, Defendant's willingness to hear Plaintiff's grievance evaporated when he invoked his right to an advisor, to which he is entitled under the written policies of Alamo Colleges District, as well as the Texas Government Code. Instead, Defendant invoked an unwritten policy under which Plaintiff's union representative would not be permitted to speak. Such policy violated Plaintiff's rights under the Sixth Amendment and/or under college policy and state law. Plaintiff had a property interest in the district's written policies granting him the assistance of an advisor (which policies were a contract with him); additionally, or alternatively, he had a property interest in the right to representation granted him under Texas law. Defendant, in refusing to

proceed with hearing Plaintiff's grievance if he insisted on his right to a union advisor, deprived him of such property interests, and did so without affording him due process.

4.15    Defendant deprived Plaintiff of his right to representation, whether such right is derived from the Sixth Amendment, the policies of Alamo Colleges District, or the Texas Government Code, guaranteeing public employees the right to representation by certain unions, including the Texas AAUP-AFT. Further, Defendant deprived Plaintiff of such right without affording him any due process, as required by the Fourteenth Amendment. Defendant abruptly, and without responding in any way to the objections of Plaintiff or his representatives, ended Plaintiff's grievance process without affording him or his representative any notice or hearing on the issue. This violation of Plaintiff's rights has proximately caused damage to Plaintiff in the form of severe mental and physical anguish. He sues here to recover damages for such injuries, as well as for nominal damages, if appropriate, and for equitable relief as may be necessary or appropriate to remedy these injuries.

**Count 5:   State Law Claim for Breach of Contract**

4.16    Alamo Colleges District board policies include prohibitions on discrimination, harassment, and retaliation. (*H.1.2 (Policy) Civil Rights Discrimination, Harassment, and Retaliation*, referred to as "H.1.2"). Under the subsection on retaliation, H.1.2 states, "a complainant has the right to have an adviser, attorney, or other advocate of the complainant's choice and at the complainant's cost present during the Civil Rights Appeal Procedure."

4.17    Under *H.1.2.1 (Procedure) Civil Rights Complaints and Resolution Procedure* ("H.1.2.1"), "Complainant's Rights" include, "a complainant has a right to have a prompt, fair, and impartial Civil Rights Complaint and Resolution Procedure that ensures a fair, prompt, and equitable process for both parties." H.1.2.1 further assures each complainant "the right to present

his or her case, including the right to an adequate, reliable, and impartial investigation of complaints, the right to an equal opportunity to present witnesses and other evidence, and the right to the same appeal procedure for complainant and respondent" *Id.;* and "the right to be free from retaliation for engaging in protected activity." *Id.*

4.18    Both Defendant and Plaintiff were expected to comply with the district policies. Because Defendant required Plaintiff to comply with its policies, the policies of Alamo Colleges District became part of Plaintiff's contract under Texas law. As an employee of Defendant, Plaintiff reported his concerns about Chair Ortiz, as detailed above, and Defendant was contractually required to abide by its board policies in the processing and investigation of Plaintiff's grievances. It was required to do so promptly, which it did not do. It was required to do so without retaliation, which it did not do. It was required to permit him the advisor of his choice, which it did not do. The conduct set forth in Section III of this Complaint constituted breaches by Defendant of Plaintiff's employment contract, which have caused him damages, for which he here sues. Further, such conduct will continue to cause damage if not enjoined. Plaintiff therefore prays for injunctive relief (a) to permanently enjoin Defendant from its practice of depriving employees of their rights to grieve conduct violative of their civil rights by using Title IX or other civil rights investigations as a cover for denial of full grievance hearings; (b) to require Defendant to recognize employees' rights to advisors of their choice who will be permitted to advocate on the employee's behalf, and not be prevented from speaking; and (c) to require Defendant to hear Plaintiff's grievance in accordance with the policies governing his contract.

**Count 6:   State Law Claim for Violation of Texas Government Code 617.005:**

4.19    While Texas law prohibits public employee unions from engaging in collective bargaining, or striking, their members nevertheless cannot be deprived of the right to present

grievances "either individually or through a representative that does not claim the right to strike." Tex. Gov't Code § 617.005. Texas courts have long held that this code provision, including its predecessor in the revised civil statutes, prohibits public employers from denying employees the right to be represented in grievance proceedings by their union. *See. e.g., Lubbock Prof'l Firefighters v. Lubbock*, 742 S.W.2d 413, 416-417 (Tex. App.—Amarillo 1987, writ ref'd n.r.e.) (City could not require a representative to be an individual, rather than an union, and could not bar a representative at any stage of the grievance procedure), citing *Corpus Christi American Federation of Teachers v. Corpus Christi Independent School District*, 572 S.W.2d 663, 665 (Tex. 1978) and *Castleberry v. Langford*, 428 F. Supp. 676, 683 (N.D. Tex. 1977) (refusal of employer to deal with union rep as representative of other employees violated his rights and the rights of other employees under Texas law).

4.20    More recently, the Texas Supreme Court has reiterated that Section 617.005 "grant[s] public-sector unionized employees the limited right 'to present grievances concerning their wages, hours of employment, or conditions of work either individually or through a representative that does not claim the right to strike.'" *City of Round Rock v. Rodriguez*, 399 S.W.3d 130, 135 (Tex. 2013). Plaintiff's union does not claim the right to strike. Yet Defendant required of Plaintiff that his representative "…must be a natural person and not an organization or other entity," and stated, "Under no circumstance will the College District engage in any conduct or action to *recognize in any respect a union*. It is prohibited by law to engage in *collective bargaining*" (emphasis added).

4.21    Defendant erroneously confused "recognizing a union" with collective bargaining, and in so doing, violated Plaintiff's rights under Texas law. "The protection of grievances in [§ 617.005] does not conflict with the prohibition of collective bargaining in [§ 617.002]." *Lubbock*

*Prof'l Firefighters,* 742 S.W.2d at 416. Plaintiff's union, Texas AAUP-AFT, never in any way attempted to enter into wage or benefit negotiations with Defendant (i.e., collective bargaining), and doing so is not a function of that union.

4.22    Thus, the only way Defendant could justify its requirement that a Title IX/Title VII grievant "is required to speak for himself/herself," and that the grievant's representative may not speak on the grievant's behalf, is by denying employees such as Plaintiff any real grievance process. Instead, the Defendant uses its investigative process to take over and pre-empt its employee's right to present a grievance. "Chapter 617, while conferring the right to present grievances, does not confer the right to union representation during investigatory interviews." *City of Round Rock*, 399 S.W.3d at 135. Defendant denied Plaintiff his grievance rights by enveloping his grievance process in its "investigative interview" process, thereby preventing him from exercising rights guaranteed him under Texas law.

4.23    Plaintiff therefore seeks declaratory and injunctive relief to remedy these violations. He seeks a judicial declaration that Alamo Colleges District's Title VII and Title IX policies, as written and as applied in his case, violate Government Code § 617.005 by preventing the presentation of a grievance by an employee, and thereby preventing such employee from being represented by his choice of advocate, including his qualified union. He further seeks injunctive relief requiring Defendant to permit him, and other employees, a grievance process, separate from its investigative process, in which no stage of the grievance process will be designated as off-limits for representation by any advocate, including a qualified union, or a representative of a union, and requiring Defendant to communicate through an employee's designated representative.

## V.  <u>REQUESTED RELIEF</u>

5.1     As the direct and/or proximate result of Defendant Alamo Colleges District's actions complained of herein, Plaintiff has been damaged and seeks recovery of the full measure of relief and damages permitted against Alamo Colleges District, including but not limited to prospective and injunctive relief and actual and/or economic damages, nominal damages, if applicable; compensatory damages, including damages for mental and physical anguish and emotional distress; equitable and declaratory relief, specifically including that set forth in paragraphs 4.16 and 4.21, and all other relief to which he may be entitled.

## VI.  <u>FEES, COSTS, AND INTEREST</u>

6.1     Plaintiff has retained the law firm of Hill Gilstrap, P.C. to represent him in connection with this matter, and has agreed to pay the law firm its reasonable and necessary attorneys' fees and costs in connection with such representation. Without waiving and/or limiting any other relief requested, Plaintiff seeks to recover his reasonable and necessary attorneys' fees and costs incurred and to be incurred in bringing this suit and in all appeals of this suit, as permitted by law or in equity, specifically including 42 U.S.C. § 2000e-5(k) and 42 U.S.C. §§ 1983 and 1988.

6.2     Plaintiff is also entitled to and seeks to recover costs of court, expert witness fees, along with pre-judgment and post-judgment interest at the maximum rate permitted by law.

## VII.  <u>CONDITIONS PRECEDENT</u>

7.1     All conditions precedent to the Plaintiff's recovery on the claims alleged herein have been performed or have occurred.

## VIII.  <u>DEMAND FOR JURY TRIAL</u>

8.1     Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff requests a jury trial and has tendered, or will tender, the requisite fee.

## <u>PRAYER</u>

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests that upon final

hearing, Plaintiff recover judgment against Defendant and be awarded:

(a)    any and all amounts recoverable and/or recognizable as damages under law and/or in equity, resulting and/or occasioned by the wrongful acts and/or conduct of Defendant (as set forth above more specifically), including both actual and nominal damages;

(b)    his litigation expenses and costs, including but not limited to his attorneys' fees and costs and any applicable expert fees;

(c)    costs of court, pre-judgment and post-judgment interest, at the maximum rate as allowed by law; and

(d)    such other and further relief, both general and special, at law or in equity, to which he may be justly entitled.

Respectfully submitted,

*/s/ Frank Hill*
FRANK HILL
Texas Bar No. 09632000
fhill@hillgilstrap.com
HILL GILSTRAP, P.C.
1400 West Abram Street
Arlington, Texas 76013

***COUNSEL FOR PLAINTIFF
SAMUEL "TONY" LONGORIA***